## CHICAGO EYE SHIELD CO. v. PULMOSAN SAFETY EQUIPMENT CORPORATION.

### No. 5006.

Circuit Court of Appeals, Seventh Circuit.

Nov. 17, 1933.

George Heidman, of Chicago, Ill., for appellant.

D. Anthony Usina, of New York City, and Wilkinson, Huxley, Byron & Knight, Henry M. Huxley, and Hervey S. Knight, all of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

The patent in suit relates to improvements in respirators. Its object was to produce a respirator particularly adapted to enable egress through noxious vapors, such as smoke in case of fire, and one that was ever ready for instantaneous use without inflation, by application over the mouth and nose of the user, and effectively conforming to the contour of the face so as to exclude smoke-charged air and other deleterious gases, and designed to enable instantaneous fastening and release of the device on the head of the user. Another object was to provide a readily removable and renewable cartridge, having a direct mounting on the respirator body, which would effectively filter and purify noxious air admitted through the cartridge into the body of the respirator, so as to cause such air to reach the mouth and nostrils of the wearer in purified condition. There is but one claim and it is set forth in the margin.[1]

The invention comprises the combination of members and arrangement of parts so combined as to co-act and cooperate with each other in the performance of the functions contemplated. The preferred embodiment of the patent is here produced:

Figure 1 indicates a respirator provided with a metallic body or shell 1a, having an air-inlet opening 2 and being provided at the inner perimetral edge with a face pressing portion 3 having in its upper portion a nose notch or depression. The marginal edge of the face pressing portion 3 is provided with a rubber rim-strip 4 which is preferably fastened to the metallic body adjacent to the nose notch 3a by a fastener 4'. The rim-strip 4 is provided with a retaining flange 4b, which closely hugs the marginal edge of the respirator and is fastened thereto at one or more points. To the outer edge of that flange is fastened a stiff reentrant face contacting strip having the form of a sectional cylinder or tube, with a reentrant grooved or cylindrical portion 5a, and an outwardly extended free edge 5b. The body of the face strip conforms to and extends outwardly beyond the

[1] "A respirator embodying a rigid shell adapted to fit over the mouth and nose of the wearer and provided with suitable inlet and outlet openings and having a rigid rim generally conforming in outline with the face of the wearer and an annular elastic air-excluding rubber cushion mounted on said rigid rim of said shell and composed of an attaching strip having a detachable connection with the outer surface of said rigid rim and a reentrant and outwardly-opening groove portion provided at one side of its groove with a free edge and connected at the other side edge to said attaching strip and extending inwardly of said rim, said cushion having a seat said attaching strip and groove portion." for said rigid rim adjacent to the connection between

edge of the respirator body, but a portion of it extends within the shell of the respirator, and its edges lie completely within the wall or face contacting opening of the respirator shell (extended), so that when the respirator shell is pressed toward the face, the face contacting strip will be capable of a flexing movement inwardly within the body and a close contact with the face will result. The respirator is preferably provided with an exhalation valve of any suitable form. An exhaling pipe 6 is provided at the bottom, to which is fastened an automatically closing pipe valve 6a of conventional type.

The preferable method of attachment to the head is by means of a strip 7 having an automatically fastening buckle 8, with a frame 8a having a toothed bar 8b slidably thereon and actuated to slide in a gripping position by a strap engaging bar 8d, integral with 8b and so arranged as to cause any backward pull on the strap to produce a gripping and tightening of 8b on the strap. The release of the buckle is permitted by a thumb piece 8c projecting from 8d.

The preferred embodiment has a screw-threaded inlet orifice 9, having removably attached thereto a cartridge 10 containing a filtering and purifying medium such as charcoal, for the purpose of filtering any air passing through it. The cartridge is provided with a screw-threaded nipple or flange 10a for engagement with the screw-threaded inlet 9.

█ The first question presented is that of validity. The prior art citations are Suess (French), No. 343,444, Henderson, No. 577,-596, Moody, No. 610,914, Kuhn, No. 938,247, Soderling, No. 1,317,949, Knoblock, No. 1,-410,928, and Rice, No. 1,465,316. Suess, Moody, Knoblock, and Rice were cited by the Patent Office, together with five others which are not of record in this appeal.

It is not contended by appellant that any of the prior art patents anticipate the claim before us, but it does contend that in view of the prior art, the patent in suit lacks patentable novelty, unless it is restricted to the exact construction shown in the drawing and specifically defined by the claim. We are convinced, however, that the field in which patentee was laboring at the time he applied for his patent was not narrowed by the prior art to the extent urged by appellant, and that owing to the obvious advancement in the art made by patentee's disclosure, the claim before us should not be so strictly construed against appellee in his limitation of equivalents as is contended by appellant.

Prior to patentee's disclosure all respirators of the prior art, excepting Suess and Soderling, supra, were of the inflated tube type, that is to say, the cushion was formed by inflation of the tube which contacted the face, thereby rendering instant use impossible in case of immediate peril. Suess and Knoblock enveloped the entire head, and that fact alone retarded their adjustment for immediate use. Soderling illustrates a non-inflated cushion, if indeed it can be called a cushion, but it is of a different construction and function from the patent in suit. Its shell and cushion are made of one integral bowl-like, relatively flexible material, preferably rubber. The thin feather edge, contacting edgewise with the face, curls to relieve somewhat the disagreeable effect on the user, but there is nothing corresponding to side wall pressure of a grooved cushion, and its inferiority to the patent in suit is supported by quite substantial oral testimony, which is abundantly confirmed by evidence of commercial use.

It is quite true that many, if not all of the elements used in the patent were old in the art, but we think appellee disclosed invention by his marked departure in the form, functioning, and results obtained in respirator cushions. His invention resides in an organization which, in addition to the rigid rim metal shell, comprises an elastic air excluding rubber cushion mounted on that rim, having a slot through which it receives the rim, and an attaching strip which tightly hugs the outer surface of the rim, thereby establishing a connection between the cushion and the rim. That strip, being of rubber, can be separated from the rim by stretching. The rubber cushion extends from the rim inwardly toward the center, then curves upon itself outwardly toward the rim so as to form a reentrant body comprising the bottom and two spaced side walls of an outwardly opening groove, of which the side wall remote from the rim terminates in a free edge, and the outside face of that side wall yieldingly contacts with the face of the wearer. The result is that under pressure developed by the strap which holds the respirator to the face, an air excluding contact is formed. The other side edge of the groove is connected with the attaching strip that hugs the rim and affords the detachable connection between the cushion and the rim.

The seat through which the cushion receives pressure from the rim is definitely located adjacent to the connection between the attaching strip and the wall of the groove so that pressure from the rim, which causes the

cushion to contact the face, is applied, not near the bottom of the groove or any other relatively non-yielding portion thereof, but to the highly flexible side edge, in the same manner as the highly flexible free edge of the outer wall contacts the face. By those means and their relative locations, a high resiliency in the cushion is quite effectually attained, as well as an air sealing contact with the face. Since that resiliency is attained by pressing transversely two self sustaining but yielding side walls of an open groove, and the pressure applied being necessarily in the direction of the shell and toward the user's face, the walls of the groove must be positioned so that they intersect the line of pressure and do not lie parallel with the pressure. The open portion of the groove must be presented outwardly near the rim of the shell, and the bottom of the groove, the main body of the cushion, must lie inwardly, from the margin of the shell toward the center, and not in the direction of the pressure as suggested by appellant. We find no patent in the prior art which discloses the location and the co-action of the means employed or the beneficial results obtained by the patent in suit, and we are convinced that its disclosure involved invention.

It is contended by appellant, however, that the file history of this patent limits its claim to a very narrow interpretation and for that reason appellant's devices can not be considered as infringing it. In support of that contention appellant suggests that the salient points of the instant claim, and those which it is insisted are infringed by appellant's devices, were included in certain of patentee's claims which were rejected by the Commissioner and by the Board, and hence the present claim can not be enlarged by interpretation to include the rejected claims.

In original claims 3, 4, and 5, the cushioning element was recited as mounted on the rim of the shell and defined as comprising a rubber rim strip having an entrant groove portion and an outwardly extending free edge. Those claims were rejected by the Commissioner on certain patents cited, which include Moody and Knoblock. Thereupon patentee cancelled all claims and substituted four new ones. In substituted claim 3, the cushion is described as comprising an attaching strip connected at one side of the rigid frame, and a reentrant and outwardly-opening groove portion arranged at the other side, and provided with an outwardly extending free edge adapted to connect with the face of the wearer. Substituted claim 4 was vol-

untarily rewritten in a supplemental amendment, without intervening rejection. That amendment was accompanied with patentee's written remark that it was "rewritten for the purpose of clearness and to bring out the feature that a seat for the rigid rim is formed adjacent to the connection between the attaching strip portion and the grooved portion of the cushion." The rewritten claim 4 is the claim of the patent now in suit. Claims 1 and 2 were rejected on Suess, and claims 3 and 4 were rejected on Rice and Knoblock in view of Suess. After discussion, however, the Commissioner allowed claim 4 and again rejected claims 1, 2, and 3. Patentee then cancelled claims 1, 2, and 3, and instituted new claims 5, 6, and 7 which were rejected by the Commissioner. From that rejection patentee appealed to the Board of Appeals, and the action of the Commissioner was affirmed, and no appeal was taken from that decision. The decision of the Board referred to claims 5, 6, and 7 as "the only claims in the case." It is true that they were the only claims in the case then before the Board, but claim 4, which is now the claim of the patent, was still existent, as it was allowed by the Commissioner, and no appeal was taken from his decision in that respect.

Original claim 2 was directed to the mounting of a cushioning element on the rim of the shell identified by the idea of having an open channel and a free edge. Original claim 3 undertook to define novelty by ascribing to the cushioning element the feature of a reentrant groove and outwardly extending free edge. Claims 2 and 3 merely specified without explaining position or cooperative relationship and of course were not sufficiently definitive as to organization of elements constituting the invention to exclude Suess. Original claims 4 and 5 merely added to claim 3 the provision of a head strap of specified construction which is not pertinent to this discussion. Likewise, original claim 1 is not pertinent as it refers only to the purifying cartridge removably connected to the body of the mask.

With respect to the second set of claims submitted, the first lacked adequate definition as to positioning of the cushion, both in its direction with respect to the rim, and the manner in which it cooperated with the rim. Claims 2 and 3 were also defective on the ground of indefiniteness in defining the cushion and its position and other cooperative conditions relative to the rim. Claim 4 which had been voluntarily amended before rejection, certainly is not available in applying the

file wrapper doctrine in the interpretation of the present claim which in fact is amended claim 4.

Of the appealed claims 5, 6, and 7, appellant selects 7 as typical, but it also lacked definitions necessary to distinguish patentee's U-shaped springy cushion receiving pressure from the rim of the shell, transversely to one wall of the cushion's grooved portion, near the edge of the portion, and transmitting such pressure resiliently to the free edge of the opposite wall of the groove and against the face of the wearer. The lack of those definitions quite obviously resulted in the ruling that the broad terms of claims 5, 6, and 7 included the idea of Suess of folding a head cloth along the inside surface of his head enveloping mask.

The equipment of the respirator shell with an improved cushion was the object sought by patentee in his invention, and the structural organization of his cushion and its relationship to the rigid rim of the shell constituted the patentable novelty. We think a reasonable analysis of his claim completely covers that novelty in a manner readily distinguishable from the rejected claims. Appellant's analysis and interpretation of the claim in suit might well support the contention that patentee's disclosure involved mechanical skill and not patentable novelty, but we can not accept that conclusion because appellant's analysis and interpretation takes liberties with the language of the claim which we think are entirely unwarranted. We are therefore of the opinion that the patent is valid, and that the real novelty disclosed as hereinbefore referred to is in no manner limited by the rejected claims.

With respect to infringement, appellant's devices Exhibits A, B, and C were introduced in evidence. The first two were manufactured and sold by appellant until it received from appellee notice of infringement, on April 23, 1929. At that time appellant discontinued making A and B, and immediately began producing and selling C, which it has manufactured and sold ever since. A and B are identical, and appellant admits that they infringe the patent in suit if Exhibit O which is appellee's product, is in keeping with the patent claim. That Exhibit O is in keeping with the claim we have no doubt, and the only remaining question is whether Exhibit C infringes Exhibit O.

A comparison of these two exhibits convinces us that Exhibit C also infringes the patent. The structural features, and the functional effect and co-acting conditions entering into the patented device are certainly present in Exhibit C, as well as in Exhibits A and B. If there be any difference in Exhibits A, B, C, and O which can be urged as material, it relates to details of the rim-mounting, but these are mere matters of design and not of substance, and whatever deviations there may be in this respect, we think they must be considered as different adaptations of the patent. The fact that the angle of one of the walls of the groove which is next to the rim, in extending inwardly, is inclined a little less severely away from the rim or toward the rear of the respirator but not so acutely toward the rim, and without the slight dip across the plane of the rim, we think is inconsequential.

We think that each of the devices made and sold by appellant embodies the operative principle and structural organization of the patent in suit and answers literally to its claim.

Decree affirmed.